Our next case for argument is United States v. Ross, Appeal No. 23-1640. Mr. Skaggs. Thank you, Your Honor. May it please the Court, I'm Ethan Skaggs. I'm the Assistant Federal Public Defender for the Southern District of Illinois. I represent Tony Ross. Mr. Ross is a convicted felon. He's a convicted felon who had a job. He was working in a jack-in-the-box when he was approached by agents that wanted to talk to him about an investigation. At that point, Mr. Ross takes a pistol and tries to hide it. You agree that that pistol was used in crimes, right? Several. Yeah, yeah. Okay, I just want to make sure. You're not challenging the ballistic evidence. You didn't challenge that below, and you're not challenging that fact on appeal, right? That's absolutely right. Okay. That is not our appeal, Judge. Mr. Ross pleads guilty and ends up with a 90-month sentence after having a high-end guideline of 46 months, a 95% increase over his guidelines. The district court talked about his criminal history. Mr. Ross had juvenile cases that didn't count. He had all his adult cases counted for points in one way or another. His felonies counted for points. One of them was a crime of violence. That increased his offense level. So, Mr. Skaggs, just to kind of cut to the chase, I understand you to be making, in a sense, two arguments. One of them may rely on the consistency of his sentence as compared to others. But the other, if I'm correct, you're concerned that the judge's reference to this gun, that the ballistics connected to homicides and other criminal activity, somehow indicated that the judge was taking a factor into account in the sentencing that was not tied at all to Mr. Ross and that that was error. And I want to focus on the second of those right now. The judge doesn't harp on this or anything. He does mention this evidence about the gun. Do we have a record that would undermine our confidence in the judge's sentencing because of that reference? The first time he references, I would agree, is a fairly short reference where he says maybe it's bad luck, you know, if. Jumping ahead, Judge, it's the second time he references. 1920 or so, when he says you just happened to be caught with a gun, et cetera. Oh, that's the bad luck one. The final reference. Okay. He's right before he pronounces his sentence. His comments. I don't think the sentencing guidelines adequately takes into consideration the minutes. Oh, and you have a gun and it's linked ballistically to a homicide and another shooting at the Roosevelt in less than a month or about a month or a little over a month. February 20th, 2022, March 23rd, 2022. But he doesn't link the defendant to those crimes. Just the gun. I would say the context there, Judge, he is linking them to those crimes. But you're reading a lot into that. I mean, wouldn't it be a fair reading of that to say you possess a crime gun which makes it more dangerous? In other words, you didn't go to a trade show or something and buy a gun. You're possessing it. And I think he even goes so far to say whoever gave you this gun did you no favor, indicating that he was not the killer. Early on, that's what he's saying. My point is what he finally says. Because what I just read is that's the last thing he says before he pronounces his sentence. So perhaps initially he wasn't making that leap or making that connection. I mean, we can all agree that there is, in fact, no connection between Mr. Ross and the crimes that the gun was associated with. No one ever tries to connect those dots. All we know is there's a ballistic report that the government mentioned in their sentencing memo. Can we back up? Whatever the district court meant here, it is clear, he says, I don't think the sentencing guidelines adequately take that into account, adequately taken into consideration. And then he pronounces the sentence, which has the variance. So is your reading of this that part of the reason for the variance is because he doesn't think the guidelines take into consideration whatever it is he means to say about this ballistic evidence that was not supported at the sentencing hearing? Our position, the reading of his last comments before he pronounces his sentences, he has at that point taken that gun and put it in Mr. Ross's hand and is assuming he's a shooter. And he is attributing those crimes. What I'm asking you is, even if he's not saying that, he could be saying, you know, you just as well may well have been the shooter. You have this gun. Or he could be saying, as Judge Kerr said, you know, you're walking around here with guns that have been used by other people in other crimes, and that's bad, too. But whether it's one or the other, he is, in fact, saying, I don't think the guidelines account for this, so I'm going to account for it with my sentence. Would you agree? I don't know that he's accounting for the fact that this gun is out there and it's committed other crimes, because the question becomes at that point is, how does that affect Tony Ross and what he's done in making the decision what to do with it? If it is a crime gun, we know that this gun committed crime. And we know it committed several crimes while Tony Ross is still in prison. So there are a lot of things on this gun, but you can't put them in Tony Ross' hand. And that's our issue, is at the end, it seems like he's putting it in his hand. Do you think it contributed to the variance? Yes. That's our position, is that very much contributed to the variance. And I say that just because of the timing when he's bringing it up. The last thing he mentions before he decides to give him the 90-month sentence. If we agree with you, though, Mr. Skaggs, don't we need to say, in our opinion, here's what the district court said, but that's not what the district court meant? Because I think you have to concede that the district judge did not assign the crimes to Mr. Skaggs. To Mr. Ross. But Mr. Skaggs, you made a good argument. I think you represented him at the sentencing hearing, right? I did. And you made a good argument that, Judge, look, this is not persuasive evidence because several of the crimes were committed with the gun while Mr. Ross was in prison. So he could not have committed those crimes. Therefore, you should not conclude that he committed these crimes either. And nowhere does the judge say, well, I'm going to assign the crimes to him or infer that he committed the crimes. He does the opposite. He never specifically says that, Judge. Well, he never specifically says it because there's no . . . I mean, I guess it would be weird for the district judge to say, I find that you did not commit crimes based on this record, right? He just doesn't say that I found that you committed them or I'm sentencing you because you committed them. We would have to say, here's what he said, but he didn't mean what he said. What about the ambiguity? I mean, there is . . . he makes these statements about the guns, but I want to back up and ask you to address one of the things Judge Kirsch said a few minutes ago, which is that if you are in possession of a gun, that the gun somehow on its own committed other crimes as though there were no people involved somehow. Is that something that is a proper thing to use to enhance a sentence? It's some other person at some other time that we don't know anything about committed crimes with this gun. I mean, the judge doesn't even say you were engaged in the illegal purchase or transfer of a gun. There's a lot that's not said. I don't see how we can attribute something that's happened with a firearm to the person that later possesses it. There's nothing any guy . . . I guess . . . We wouldn't want to go there. I mean, a person with a completely legitimate gun could have it stolen from their house one night and a criminal could go out and do something and then return it to the front porch and you certainly wouldn't charge the homeowner. And there's certainly not a guideline provision that says you need to be held accountable for what's happened with this gun other than I guess arguably you could say the stolen firearm enhancement. You don't have to know that the firearm's stolen and you get the enhancement. Right. I'd save the rest of my time to worry about it. Certainly. Ms. Burns. May it please the Court? Allie Burns on behalf of the United States. Mr. Ross's 90-month sentence was not a result of procedural error and that sentence was substantially reasonable. Why is the history of this gun even remotely relevant to the sentence that Mr. Ross should get? I'm troubled by the thought that there's this gun and somebody goes and does ballistics tests on it and the temptation in your mind to link it to him somehow or another is a strong one and yet it's irrelevant. Sure, Your Honor. I think based on the district court's statement, the tone of the statement was not holding Mr. Ross accountable for this homicide and the shooting that happened within a month or so of him being found with that gun. What the court was linking was outside of just talking about the ballistics but the continuous theme about Mr. Ross is his wanting to be involved in violence and his connection. Why does the gun have anything to do with that? He says it could have been a perfectly legitimate gun. You went to a gun show and you went to Joe's Firearms and bought a gun. I don't know why it tells you anything about the sentence for this 922G offense. Well, I would say first I don't believe that this was the basis for the court to sentence him to 90 months. I think the record was clear. There were infinite other reasons that that above guideline sentence occurred. However, what I would say is- So maybe are you arguing then that the reference to the gun should be viewed as harmless error? Absolutely. I think the reference to the gun, while the court absolutely referenced it, I mean I can't dispute that the record speaks for itself, it was more of a passing thought. And I think the last statement that the defense has raised, again, if you look at the record, he says, oh, and. And so it's almost like a passing thought, something else he just wanted to reference. But it wasn't the reason for this. Well, he says- Go ahead. He says, I don't think the sentencing guidelines adequately takes this into account. But before we go on and continue, have you waived harmless error as an argument here? Can I ask one question to follow up on that? Are you conceding it's error? No, Your Honor. Okay, now have you waived harmless error? I don't recall you raising that in your briefs. No, Your Honor. I guess what I should say is we're saying it's not an abuse of discretion and that the sentence was substantively reasonable, but that was not a procedural error by any means in him referencing that. And I don't want to disregard your question. No, no. I think when Judge Wood asked you a question, I think it could be interpreted as you conceding that there was error in relying on the ballistics. No, I only meant if we were to decide it's error, not your argument, but if we were to think that, would it be harmless? That's kind of the way I was trying to put it. I think the way I understand what the district judge was doing is suggesting that the defendant could be viewed as a little more dangerous. This is a little weird is what the district judge is saying. He works at a Chick-fil-A. I forgot the name of the restaurant. Jack in the Box. Jack in the Box. Jack in the Box. And he goes in. We don't have Jack in the Box around here. It's a Texas thing. So he works at Jack in the Box, and the police go to interview him, and lo and behold, he's got a gun in his waistband working at Jack in the Box. It's not terrific facts, right? And then to find out this is not just any old gun, this is a crime gun. And by the way, there are certain guns that require enhancements. Like, for instance, if you have a gun that has an obliterated serial number, that makes the gun more dangerous, and therefore you get a two-level enhancement. The district judge is saying, look, this gun was used in a murder. That's something that I should consider here, and I'm going to consider it. And then we get to whether it was substantively reasonable for the judge to depart, at least in part based upon the consideration that this gun was used in. It's a crime gun. I mean, that's what it is. Correct. And I think that that is the tone of the court's statements, is more that Mr. Ross is connected to this criminal element. Like, it's not that he committed these crimes. He's not holding him accountable to that, but that this is not a firearm that was found in his house left by his grandfather. I certainly understand why the government raised it, and the government put a line in the sentencing memo and then mentioned it again at the sentencing hearing. What I can't understand, and I want you to address, is why it was proper the way the government introduced this at sentencing. Your Honor, I think it was proper because first I would say, and defense conceded, that they waived any argument to the accuracy of that ballistics report. No, they're not making it because he would lose acceptance or responsibility if they did. Mr. Skaggs' argument is we are not challenging the ballistics reports. If we did, that would be a factual argument, and Mr. Ross would certainly lose acceptance or responsibility once the government called an ATF agent who testified undisputedly that the gun was used in a murder. Sure. And I think the reason, though, that it's relevant is just going back to the prior— No, no, no, no, no. I'm not questioning the relevance or anything. I'm wondering why the government did not submit the FBI ballistics report or the letter saying this or put somebody on the stand because we have this clear law that the court's got to rely on, but the court can only rely on supported statements as evidence. Separate and apart, we know the rules of evidence don't apply at sentencing, but it has to be reliable. It can't be allegations and attorney statements, even if it's the attorney of the government. Attorney statements don't survive a due process challenge. Certainly, if no one challenges it, attorneys say all sorts of things at sentencing, and the district courts talk about it and rely on it, et cetera, et cetera, all well and good, but once we're at the stage of it's a due process challenge, our laws that an attorney statement bear is not supported. That doesn't reach the probable accuracy threshold. I'm trying to understand why you think it does, absent some extrinsic evidence here. Your Honor, I think it would tie back to the fact that it was undisputed. It was disclosed in discovery. It was brought up prior to the sentencing hearing, so if there was any dispute to it, then evidence could have been put on and the record would have played out differently, but because there was no objection, in fact, the defense relied on it in their arguments to distance Mr. Ross from other crimes in it that I don't think there was any obligation to, because it's not just attorney statements. It was disclosed in discovery and undisputed. It's just like it's the same reason you don't submit certified conviction histories for every single conviction of the defendant. You just look at the pre-sentence report, no objections to paragraph 20 through 38. That's it. We move on. But he's not disputing the accuracy of the ballistics evidence. He's disputing what he sees, and it's a separate matter from what we will see when we look at it, but what he sees as the inference the government was asking the court to draw from all this, which is linking Tony Ross to this gun. Your Honor, I would say that's absolutely not the inference that the government was making. It was very clear. There was one sentence in my sentencing memorandum that stated the firearm was ballistically linked. I understand that. And then he's also disputing the court's reliance on this as a basis, and I heard you be saying at the end it is a basis. It's just that the court had plenty of other bases too, as a basis for a variance when it was not supported in the record. Correct. And my reading, and I was also at the sentencing hearing and my recollection of the way the court made that last statement, and you see it in the record. It doesn't matter the way the court made it. We just read the words, okay? Sure. And we have to say we reject what the district court said because that's not what it meant. Correct. Right? We have to. If we're going to say we're tying the gun to Tony Ross, we have to say we reject what the government argued and we reject what the district judge said because we think the district judge meant something else. Correct. I would agree with that. And I think the record itself also reads to say that that is not what the district court said or meant because when you look at that last statement. It's just like the obliterated serial number, right? He's saying the guideline takes account in obliterated serial number. Correct. Right? The guideline doesn't take account that the gun was used in prior crimes. Now, we can reject that and say it's a factor that should not be considered and then we would reverse or we could reverse, right? I mean, you're saying even if we reject it, we should not reverse, but we have to reject it. Correct. I think you have to reject it, and I would go back to in the record, there's five additional pages of the court highlighting that these priors, some are not accounted for, that the ones that are are more extreme than what the guidelines give and account for, and that is all, and the other reasons that he had a good home life that many defendants don't, he took that as an aggravator, and all of those reasons were the reason for the 90-month sentence, not the ballistics report. Unless the court has any other questions, we'd ask the court to affirm. Thank you. Okay, thank you. Mr. Skaggs, we'll give you a minute on rebuttal. I don't think we've ever heard from the government why the language about the ballistics report was put in the sentencing memo. You can make a lot of guesses because it doesn't make Tony Ross look good, but when all is said and done, it's unproven, uncharged conduct. Without any additional information, her position is that is unreliable to rely on. So that's all I have. We'd ask you to vacate the session. Okay, thank you, Mr. Skaggs. Thank you. Okay, the case will be taken under advisement.